**In re Willis R. GERTH, Debtor.**

**Bankruptcy No. 91–10002–INH.**

United States Bankruptcy Court,
D. South Dakota, N.D.

Oct. 25, 1991.

Harry A. Engberg, Sioux Falls, S.D., for debtor.

Thomas A. Lloyd, Asst. U.S. Atty., Pierre, S.D., for creditor ASCS/CCC.

MEMORANDUM OF DECISION RE: MOTION FOR MODIFICATION OF AUTOMATIC STAY AND FOR SETOFF

IRVIN N. HOYT, Chief Judge.

The matter before the Court is the Motion for Modification of Automatic Stay and for Setoff filed by the Agricultural Stabilization and Conservation Service and the response thereto filed by Debtor. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). This ruling shall constitute Findings and Conclusions as required by F.R.Bankr.P. 7052.

I.

Willis R. Gerth (Debtor) filed a Chapter 11 petition for reorganization on April 5, 1985. His plan of reorganization was confirmed by Order entered October 3, 1986. That plan set forth the treatment for the claim of the Agricultural Stabilization and Conservation Service (ASCS) and recognized an earlier stipulation between the

parties regarding use and repayment of cash collateral.

Debtor entered into a Conservation Reserve Program (CRP)[1] contract with the Agricultural Stabilization and Conservation Service (ASCS) on August 27, 1987. The first payment under the contract was made in 1987; the final payment will be made in 1996. The amount not yet paid through 1996 totals $1,956.00.

Debtor filed a Chapter 12 petition for debt adjustment on April 17, 1989. He filed a plan on July 20, 1989. That plan stated ASCS had a secured claim of $10,014.14 and an unsecured claim of $38,255.00 for unpaid cash collateral arising from Debtor's previous Chapter 11 proceeding. The Chapter 12 case was dismissed by Order entered August 2, 1989 because the Court concluded that the Chapter 12 filing was an impermissible attempt by Debtor to modify his prior Chapter 11 case. 116 B.R. 167.

Debtor entered into a second CRP contract with ASCS on July 21, 1989. Through the life of this contract, Debtor may receive a total of $24,020.00.

On Debtor's own motion, his earlier Chapter 11 case was dismissed by Order entered June 26, 1990.

Debtor filed another Chapter 12 petition on January 7, 1991. Debtor filed a Motion to Accept CRP Contract on April 2, 1991. No objections to the Motion were filed and the Court approved the Motion by Order entered June 14, 1991.

Debtor filed his Chapter 12 plan on May 14, 1991. This plan recognizes ASCS has an unsecured claim of $38,566.00 for prior, unpaid cash collateral. Debtor proposes to repay this cash collateral with disposable income.

On April 18, 1991, pursuant to an agreement of interested parties, the Court entered an Order Authorizing Use of ASCS's Cash Collateral.[2] That Order provides that

1. For a good summary of the nature and purpose of the Conservation Reserve Program, see United States v. Gore (In re Gore), 124 B.R. 75, 77 (Bankr.E.D.Ark.1990), and In re Ratliff, 79 B.R. 930, 931–32 (Bankr.D.Colo.1987).

2. The April 18, 1991 Order stated, in part, that the debtor may use as cash collateral a portion of his government program proceeds being held by the ASCS in the total amount of $40,716 from 1990 CRP rental payments, CRP seeding cost-share payment, and final 1990

Debtor may use a portion of some government program payments held by ASCS, including some CRP payments, as cash collateral. The Order also sets forth how this cash collateral will be repaid, as well as how some of Debtor's prior cash collateral obligation will be repaid. The agreed Order does not apply all Debtor's future CRP payments to ASCS's claim.

On July 17, 1991, ASCS filed a Motion for Modification of Automatic Stay and for Setoff in which ASCS seeks the Court's permission to setoff Debtor's remaining annual CRP payments of approximately $17,310.00 that Debtor will receive through 1999 against, first, ASCS's cash collateral claim of $33,624.84 and, second, ASCS's repayment claim of $3,166.16 for unearned advanced deficiency payments for 1988 and 1989. ASCS further argues that Debtor's proposed plan treatment of ASCS's claims for repayment of cash collateral and unearned advanced deficiency payments as unsecured was contrary to their April 18, 1991 cash collateral agreement.[3]

A hearing was held on ASCS's Motion on July 22, 1991 in conjunction with several other matters in the case. The Motion was taken under advisement upon receipt of briefs from both Debtor and ASCS.[4] There are no significant factual disputes.

## II.

The issue before the Court is whether ASCS should be allowed to offset its claim against post-petition CRP contract payments to Debtor arising from two CRP contracts between the parties. The issue requires the resolution of two questions. First, are the criteria for an offset as preserved for creditors in 11 U.S.C. § 553(a) met? Second, is relief from the automatic stay under 11 U.S.C. § 362 warranted to allow the offset if all other provisions of § 553(a) are met?

Section 553(a) states:
Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case ....

11 U.S.C. § 553(a) (in pertinent part). Essentially, § 553(a) recognizes any setoff right that existed before the bankruptcy filing. *United States v. Rinehart*, 88 B.R. 1014, 1016 (D.S.D.1988), *aff'd in part, rev'd in part*, 887 F.2d 165, 168 (8th Cir. 1989). The section does not create setoff rights but preserves those recognized under state or non-bankruptcy federal law. *In re Cloverleaf Farmer's Cooperative*, 114 B.R. 1010, 1016 (Bankr.D.S.D.1990). ASCS relies on several federal regulations promulgated by the Secretary of Agriculture pursuant to the various federal farm programs to establish this independent right to setoff under federal law. Debtor does not challenge the validity or applicability of these regulations.

Once the independent right to setoff has been established, the three elements of § 553 must be satisfied. *See In re Evatt*, 112 B.R. 405, 410 (Bankr.W.D.Okla.1989). First, the debtor must have a pre-petition claim against the creditor. Second, the creditor must have a pre-petition claim against the debtor. Third, the obligations must be mutual; that is, the debts in question must be in the same right and between the same parties, standing in the same

corn and wheat deficiency payments after allowing ASCS to set off approximately $1,692 plus interest to repay the first of three annual installments on the debtor's 1988 and 1990 unearned deficiency payment, which totaled $5,077.82; the debtor shall further allow ASCS to offset a $5,000 payment plus interest due to ASCS on November 11, 1989, on his obligation to repay cash collateral in his previous Chapter 11 case. After payment of these amounts, the debtor is authorized to use

the balance of the ASCS program payments and cash collateral for the purposes set out in Exhibit A of debtor's April 1, 1991, motion[.]

3. ASCS did not develop this argument further in its brief or reply brief and the Court has not considered it further. ASCS may raise it again at a continued confirmation hearing.

4. Both parties are to be commended for the high quality of their memorandums of law.

capacity. *United States v. Gore (In re Gore)*, 124 B.R. 75, 78 (Bankr.E.D.Ark. 1990). Debtor concedes that ASCS has a prepetition claim against him. Therefore, only the first and third questions must be answered here.

### III.

*Pre-petition Debt Owed by Creditor to Debtor.*

■ Several courts have addressed the issue of whether prepetition farm program contracts are executory contracts when some or all of the government payments are made post-petition. Those that specifically dealt with post-petition CRP payments provide useful guidance.

In *In re Ratliff,* 79 B.R. 930 (Bankr. D.Colo.1987), the court declared CRP payments were like rent and thus held the Government's obligation to make these "rent" payments arose pre-petition. *Id.* at 933. However, the Court also noted that the CRP contract "bears all the classic earmarks of an executory contract [because] [u]nder its terms both parties have ongoing obligations—the Government to pay rent and the Debtors to continue to implement the conservation programs." *Id.* Although the debtors had to assume the executory contract post-petition, the court still considered the payments to be pre-petition obligations; the court reasoned that the debtors had to take the burden of the contract—the government's right to setoff—along with the benefits. *Id.*

In *In re Lundell Farms,* 86 B.R. 582 (Bankr.W.D.Wisc.1988), the court followed an earlier Chapter 7 case involving setoff of deficiency program payments. *See Moratzka v. United States (In re Matthieson),* 63 B.R. 56 (D.Minn.1986). The *Lundell Farms* court found that the minimal conservation practices and reporting requirements with which the debtor had to comply in the deficiency and CRP farm programs did not render the contracts executory and that a final pre-petition determination of the deficiency amount is unnecessary to preserve the post-petition set off right. *Lundell Farms,* 86 B.R. at 584–85. It is important to note, however, that in *Lun-*

*dell Farms* there were no material obligations left for either side to perform and the amount of the deficiency payment was already ascertainable. *Id.* at 588. The court held that the contracts were not executory "insofar as they provided the rights to receive the payments" that the Government sought to setoff and, consequently, the court concluded that the Government's debt to the debtor arose pre-petition and could be setoff. *Id.*

In *In re Evatt,* 112 B.R. 405 (Bankr. W.D.Okla.1989), the court thoroughly reviewed the competing arguments espoused in *Matthieson,* 63 B.R. 56, and *Walat Farms, Inc. v. United States (In re Walat Farms, Inc.),* 69 B.R. 529 (Bankr.E.D.Mich. 1987). Unlike *Matthieson, Walat Farms* was a reorganization proceeding in which the court denominated the deficiency payment program contract between the Government and the debtor to be executory because several duties required by the contract were substantially unperformed at the time that the debtor filed his petition. *Walat Farms,* 69 B.R. at 531. Consequently, the court determined that the debtor's right to payment arose only post-petition after proper assumption of and performance under the contract by the debtor-in-possession. The *Evatt* court adopted this rationale.

> Where substantial performance remains due under ASCS/CCC contracts, and ASCS/CCC is obligated to make payment only upon completion of performance, such contracts are executory in nature. Upon the debtor-in-possession's assumption of such executory contracts, they become post-petition contracts of the estate. Payments arising under these post-petition contracts do not constitute pre-petition debts of the creditor, thus cannot be offset against a debtor's pre-petition debts pursuant to § 553.

*Evatt,* 112 B.R. at 411–12.

In *United States v. Gore (In re Gore),* 124 B.R. 75 (Bankr.E.D.Ark.1990), the court recited the basic provisions of a CRP contract.

> The obligations of the parties to a CRP contract are set forth by federal regula-

tion. 7 C.F.R. pts. 704, 718 (1990). Under 7 C.F.R. § 704.12(a)(1), all CRP participants are obligated to "[c]arry out the terms and conditions of the CRP Contract for a period of 10 crop years from the date the CRP Contract is entered into by the participant and [the Government]." .... To determine continued eligibility for the program, the CRP participant is required to annually furnish a report of "acreage, land use, production and other program requirements." 7 C.F.R. § 718.6(a). The federal regulations also require the participant to "implement a conservation plan" by, among other things, withholding the set-aside acreage from production and providing a vegetative cover to control soil erosion. 7 C.F.R. § 704.12(a)(2)–(8). The regulations provide that, if a CRP participant fails to carry out the conditions of the CRP contract, the Government may terminate the contract, and the participant "shall forfeit all rights to further payments under the CRP Contract, refund all payments received together with interest thereon ... and pay liquidated damages to [the Government] in such amount and under such conditions as are specified in the CRP Contract." 7 C.F.R. § 704.22(a)(1)–(2).

*Id.* at 77. In *Gore,* the court recognized post-petition CRP payments were contingent on the debtors' compliance with the various regulations discussed above. *Id.* at 77–78. Therefore, the court deemed the CRP contract to be an executory contract that the debtors could assume post-petition. *Id.* at 78. Further,

[t]he assumed CRP contract then becomes a postpetition contract under which the debtors-in-possession are obligated to perform. The Government's obligation to make the annual postpetition payments under the assumed contract will accrue only as the obligations of the debtors-in-possession are *performed* post-petition. If the debtors-in-possession fail to perform, the Government can terminate the contract. Therefore, the Government's debt to the Gores was not absolutely owed prepetition and the post-petition CRP payments cannot be offset

against the Gores' prepetition debt to the [Government].

*Id.* Setoff was denied. *Id.*

This Court concludes that the decisions of the courts in *Gore* and *Evatt* are the better reasoned because each recognizes the executory nature of an uncompleted CRP contract. Debtor has material, continuing obligations that he must perform post-petition in order to insure future CRP payments and to avoid having to refund past payments. Since Debtor's failure to continue to fulfill his reporting, conservation, and other related obligations under the contract will constitute a material breach, the contract is an executory contract. *Speck v. First National Bank (In re Speck),* 798 F.2d 279, 279–80 (8th Cir. 1986); *Northwest Airlines, Inc. v. Klinger (In re Knutson),* 563 F.2d 916, 917 (8th Cir.1977). Since Debtor, as the debtor-in-possession, may accept or reject this executory contract, as provided by 11 U.S.C. §§ 365 and 1222(b)(6), payments thereafter to which Debtor becomes entitled constitute post-petition obligations between the Government and Debtor. Consequently, ASCS is not entitled to setoff these post-petition payments against its pre-petition claim under § 553.

*Mutuality of Obligations.*

■ It is clear in this District that the various federal agencies stand in the same capacity as other federal agencies for § 553 offset. *See United States v. Rinehart,* 88 B.R. 1014, 1016–17 (D.S.D.1988). Debtor, however, raises the question of whether the pre-petition Debtor and the post-petition Debtor-in-possession are the same party standing in the same capacity under § 553.

Although not extensively discussed by other Bankruptcy Courts that have addressed this issue, a United States Supreme Court case provides ample guidance for this Court to conclude that, for purposes of offset under § 553, a debtor and a debtor-in-possession in a reorganization case are the same party standing in the same capacity.

In *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), the Supreme Court was asked to consider whether a debtor-in-possession was a "new entity" whose ability to reject an executory collective-bargaining agreement differed from that of the pre-petition employer. The Court held:

> Much effort has been expended by the parties on the question of whether the debtor is more properly characterized as an "alter ego" or a "successor employer" of the pre-bankruptcy debtor.... [Cites omitted.] We see no profit in an exhaustive effort to identify which, if either, of these terms represents the closest analogy to the debtor-in-possession. Obviously, if the [debtor-in-possession] were a wholly "new entity," it would be unnecessary for the Bankruptcy Code to allow it to reject executory contracts, since it would not be bound by such contracts in the first place. For our purposes, it is sensible to view the debtor-in-possession as the same "entity" which existed before the filing of the bankruptcy petition, but empowered by virtue of the Bankruptcy Code to deal with its contracts and property in a manner it could not have done absent the bankruptcy filing.

*Id.*, 465 U.S. at 527–28, 104 S.Ct. at 1197.[5] Likewise, this Court concludes that a mere change in Debtor's title to debtor-in-possession is not significant basis on which to determine the mutuality of a debt. *See In re Affiliated Food Stores, Inc.*, 123 B.R. 747, 748–49 (Bankr.N.D.Tex.1991) (cases cited therein). Rather, the important distinctions here are whether the Debtor's contract with ASCS is executory and whether the Government's obligation to Debtor arises post-petition.

### IV.

Neither party presented evidence or argument on whether ASCS is entitled to relief from the automatic stay under the standards of 11 U.S.C. § 362 if the Court determined ASCS was otherwise entitled to a setoff. The Court having concluded that ASCS is not entitled to a setoff under § 553 because Debtor does not have a pre-petition claim against ASCS, further discussion of § 362 is unnecessary.

An order will be entered denying the Motion for Modification of Automatic Stay and for Setoff filed by the Agricultural Stabilization and Conservation Service.

---

**5.** Congress responded to the *Bildisco* decision by enacting 11 U.S.C. § 1113. *See United Steel Workers of America v. Unimet Corp. (In re Uni-* *met Corp.)*, 842 F.2d 879, 882 (6th Cir.1988). The legislation did not effect the Court's lack of support for the "new entity" theory.