**In re Steve A. BUCKNER, Debtor.**

No. 91–4076–SAC.
Bankruptcy No. 90–42105–13.

United States District Court,
D. Kansas.

March 16, 1994.

Jan M. Hamilton, Hamilton, Peterson, Tipton & Keeshan, Topeka, KS, and Timothy J. Larson, Larson Law Offices, P.A., Iola, KS, for debtor.

Connie R. DeArmond, Office of U.S. Atty., Wichita, KS, for appellant Farmers Home Admin.

## MEMORANDUM AND ORDER

CROW, District Judge.

This bankruptcy case comes before the court upon the United States' appeal, on behalf of the Farmers Home Administration (FmHA), from an adverse decision by the bankruptcy court. The United States contends that the bankruptcy court erred in denying its motion for relief from the automatic stay to exercise its right of setoff against annual Conservation Reserve Program (CRP) payments to be received by the debtor, Steve Buckner.

The court, having given considerable time and consideration to the briefs of counsel and to several cases discussing two divergent lines of authority relevant to the issues presented by this case, is now prepared to rule.

### Standard of Review

On appeal from the bankruptcy court, the district court sits as an appellate court. *See* 28 U.S.C. § 1334(a). Findings of fact are not to be set aside unless clearly erroneous; conclusions of law are reviewed *de novo*.[1] *Virginia Beach Federal Sav. and Loan Ass'n v. Wood*, 901 F.2d 849, 851 (10th Cir.1990); *In re Schneider*, 864 F.2d 683, 685 (10th Cir. 1988); *see* Bankruptcy Rules 7052 and 8013.

### Chronology of Facts

The basic facts are uncontroverted. On March 22, 1984, the FmHA made a loan to Steve A. Buckner in the original principal amount of $98,000. On February 24, 1987, Buckner signed an agreement to enter into the Conservation Reserve Program (CRP),[2] and at that time became entitled to receive an annual payment of $5,562.20 for a period of ten (10) years. Pursuant to the terms of the CRP agreement, the regulations at 7 C.F.R. Part 704 are incorporated by reference as part of the contract. Regulations regarding setoff and withholding set forth in Title VII of the C.F.R. are also incorporated by reference as part of the contract. Pursuant to its own terms, the CRP contract is effective when signed by the owner of the land to be placed in CRP and an authorized representative of the Commodity Credit Corporation (CCC).[3] A CCC representative signed the contract on July 1, 1987.

On July 26, 1990, FmHA notified Buckner and the Agricultural Stabilization and Conservation Service (ASCS) office that FmHA requested an administrative offset from ASCS due to Buckner's default on his loan from FmHA. FmHA requested offset against the CRP payments up to the total amount delinquent, $31,502. On July 30, 1990, the ASCS office accepted FmHA's offset request.

On November 1, 1990, Buckner commenced this Chapter 13 proceeding by filing his voluntary bankruptcy petition. On November 20, 1990, the United States filed its proof of claim in this case in the amount of $128,079.65. On December 10, 1990, the United States filed a motion for an order lifting stay to exercise setoff against Buckner's annual 1990 CRP program payment of $5,562.20. On March 1, 1991, FmHA made a motion to lift stay to exercise setoff against all future CRP payments Buckner was to receive.

---

1. In *United States v. Gerth*, 991 F.2d 1428, 1430 (8th Cir.1993), the court of appeals, in addressing essentially the same issue as in the case at bar, stated that "[w]hether ASCS has a right of setoff is a matter of law, which we review de novo."

2. The objectives of the Conservation Reserve Program are set forth in the Code of Federal Regulations:

(1) Reduce water and wind erosion,
(2) Protect our long-term capability to produce food and fiber,
(3) Reduce sedimentation,
(4) Improve water quality,
(5) Create better habitat for fish and wildlife though improved food and cover,
(6) Curb production of surplus commodities, and
(7) Provide needed income support for farmers.
7 C.F.R. § 704.1 (1992).

3. "CCC is a wholly-owned government corporation within the United States Department of Agriculture. Because CCC has no employees, the Secretary of Agriculture established ASCS to act on behalf of CCC and to administer government farm programs." *U.S, Through ASCS v. Gerth*, 991 F.2d 1428, 1430 n. 1 (8th Cir.1993). CCC administers CRP payments through ASCS. *In re Mohar*, 140 B.R. 273, 275 (Bankr.D.Mont.1992).

The bankruptcy court held that the United States was entitled to exercise the right of setoff against Buckner's 1990 CRP program payment. Apparently, the only remaining obligation with regard to the 1990 CRP payment was the payment itself. Neither party objects to this ruling by the bankruptcy court. The bankruptcy court went on to hold, however, that the United States may not setoff Buckner's prepetition debt against the postpetition CRP payments to be made to him. Specifically, the bankruptcy court stated:

### CONCLUSIONS OF LAW

The parties have cited cases reaching opposing conclusions on the question before the court. The debtor relies on *In re Evatt,* 112 B.R. 405 (Bankr.W.D.Okla. 1989), aff'd 112 B.R. 417 (W.D.Okla.1990), where the court determined that CRP contracts are executory and become postpetition contracts upon assumption by the debtor-in-possession, so the payments under them may not be set off against prepetition debts. The government relies on three cases involving CRP contracts, *In re Greseth,* 78 B.R. 936 (D.Minn.1987); *In re Lundell Farms,* 86 B.R. 582 (Bankr. W.D.Wis.1988); and *In re Ratliff,* 79 B.R. 930 (Bankr.D.Colo.1987), where the courts found that postpetition CRP payments could be set off against prepetition debts of the government. This court agrees with the reasoning of *Evatt* and concludes the government may not set off the debtor's prepetition debt against the postpetition CRP payments to be made to him.

The CRP contract is executory because for the ten-year duration of the contract, the debtor must refrain from using the covered acreage for production of forage and perform certain conservation practices, or suffer certain penalties which may include forfeiture of all future payments and an obligation to refund all payments previously received plus interest. As a result, the contract may be assumed by the debtor-in-possession and become a postpetition contract, *Evatt,* 112 B.R. at 410–12, or be rejected and therefore deemed to be breached prepetition under 11 U.S.C. § 365(g)(1). The *Greseth* court ignored

the significance of the debtor's option to assume or reject and concluded setoff was appropriate simply because the CRP contract between the government and the debtor had been formed prepetition. 78 B.R. at 941–42. The *Lundell Farms* court overlooked the significance of the substitution of the debtor-in-possession for the debtor in the assumed contract in concluding the CRP and other debt were mutual, and otherwise followed the *Greseth* court's reasoning. 86 B.R. at 584–88. While recognizing the CRP contracts are executory and that debtors-in-possession will not assume them and thus the government will have no payments to offset is allowed, 79 B.R. at 933, the *Ratliff* court failed to recognize that 11 U.S.C. § 553 limits the right of setoff to mutual prepetition debts so that a debtor-in-possession may assume a prepetition contract without subjecting postpetition payments under the contract to being set off against unrelated prepetition debts owed to the other party to the contract. *Ratliff* also mistakenly relied on a Tenth Circuit case involving recoupment rather than setoff where the debtor assumed a contract that included an obligation to repay prepetition overpayment that had been made under that contract. 79 B.R. at 933 (citing and quoting from *In re B & L Oil Co.,* 782 F.2d 155 (10th Cir.1986); see 4 *Collier on Bankruptcy* ¶ 553.03 (§ 553 setoff involves debts from different transactions while recoupment involves a single transaction). The setoff rights incorporated into the assumed CRP contract here may still be asserted against other post petition debts, just not against any prepetition debts. See 4 *Collier* § 533.08[1] at 533–41 (15th ed. 1990) ("A postpetition obligation for rent owed to the estate by a creditor-lessee may not be setoff by the creditor against a prepetition obligation of the debtor-lessor.").

The United States' motion for relief from stay to exercise setoff against CRP program payments to be received in the future was therefore denied. The United States timely appeals the decision of the bankruptcy court.

## Setoff [4]

Title 11, section 553 provides in pertinent part:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title [11 USC §§ 362 and 363], this title [11 USC §§ 101 et seq.] does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title [11 USC §§ 101 et seq.] against a claim of such creditor against the debtor that arose before the commencement of the case ...

The Tenth Circuit has recently discussed the general principles of setoff.

The common law doctrine of setoff, as recognized in section 553 of the Bankruptcy Code, grants a creditor the right "to offset a mutual debt owing by such creditor to the debtor" so long as both debts arose before commencement of the bankruptcy action and are indeed mutual. 11 U.S.C. § 553(a); *see Tradex, Inc. v. United States (In re IML Freight, Inc.)*, 65 Bankr. 788, 791 (Bankr.D.Utah 1986). This mutuality requirement mandates that the debts involved be between the same parties standing in the same capacity, *see England v. Industrial Comm'n (In re Visiting Home Servs., Inc.)*, 643 F.2d 1356, 1360 (9th Cir.1981) (interpreting a predecessor to § 553); *In re O.P.M. Leasing Servs., Inc.*, 68 Bankr. 979, 986 (Bankr. S.D.N.Y.1987) (interpreting § 553), and that each debt be valid and enforceable. *See Borkman v. U.S. Pipe & Foundry Co. (In re Borkman)*, 17 Bankr. 710, 712 (Bankr.E.D.Tenn.1982) (quoting 4 Collier on Bankruptcy § 553.04[2] (L. King 15th ed. 1979)). The mutual debt need not, however, have arisen out of the same transaction in order for setoff to be avail-

able under the statute. *See id.; IML Freight, Inc.*, 65 Bankr. at 793.

*In re Davidovich*, 901 F.2d 1533, 1537 (10th Cir.1990).

More succinctly, the party asserting the right to setoff must demonstrate:

1. A debt exists from the creditor to the debtor and that debt arose prior to the commencement of the bankruptcy case.

2. The creditor has a claim against the debtor which arose prior to the commencement of the bankruptcy case.

3. The debt and the claim are mutual obligations.

*U.S. Through ASCS v. Gerth*, 991 F.2d 1428 (8th Cir.1993) (*quoting Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030, 1035 (5th Cir.1987) (*quoting In re Nickerson & Nickerson, Inc.*, 62 B.R. 83, 85 (Bankr. D.Neb.1986))).

With these general principles of setoff in mind, the court will turn to the issue at hand. The courts are divided as to whether the government may exercise setoff against CRP program payments. Some courts, like the bankruptcy court in the case at bar, have held that the government may not setoff CRP program payments. *See, e.g., In re Gore*, 124 B.R. 75 (Bankr.E.D.Ark.1990) (federal government cannot offset it obligation under CRP agreement to make postpetition payments to Chapter 12 debtors-in-possession by debtors' prepetition obligation to government under SBA loan); *In re Evatt*, 112 B.R. 405 (Bankr.W.D.Okla.1989), *aff'd*, 112 B.R. 417 (W.D.Okla.1990) (FmHA only entitled to offset those price support payments to Chapter 12 debtors owed prepetition against debtors' prepetition obligation to government); *In re Gerth*, 136 B.R. 241 (Bankr. D.S.D.1991) [5] (ASCS not entitled to set off postpetition payments under CRP program

---

4. To clarify, setoff and recoupment, while often confused, are separate doctrines in bankruptcy cases. *See In re Davidovich*, 901 F.2d 1533, 1537 (10th Cir.1990) ("The common law doctrine of recoupment, while frequently merged with the doctrine of setoff in other contexts, is a distinct doctrine in bankruptcy cases.") (citing *see Ashland Petroleum Co. v. Appeal (In re B & L Oil Co.)*, 782 F.2d 155, 157 (10th Cir.1986); *see United Structures v. G.R.G. Engineering*, 9 F.3d

996, 998 (1st Cir.1993) ("'setoff involves mutual debts arising from *unrelated transactions* and recoupment covers reciprocal obligations arising out of the *same transaction*'") (quoting 1 David G. Epstein et al., Bankruptcy § 6–45, at 703 (1992)).

5. This decision was reversed by *U.S. Through ASCS v. Gerth*, 991 F.2d 1428 (8th Cir.1993) (2–1 decision; Heaney, J., dissenting).

contract with ASCS against its prepetition claims).

Cases that have not allowed the government to setoff against CRP payments have essentially followed a line of authority developed in *Walat Farm, Inc. v. United States of America (In Re Walat Farms)*, 69 B.R. 529 (Bankr.E.D.Mich.1987). In *Walat Farms*, the court found that a CRP contract is an executory contract which the debtor-in-possession can assume postpetition. *Id.* at 531. The court went on to conclude:

> It follows then that if the contract is properly assumed by the debtor in possession, any right to a deficiency payment could only arise postpetition, and be owed to the debtor in possession ... and not the debtor. Consequently, mutuality would not exist and setoff would be disallowed.

*Id.* The court also indicated that assumption of the contract makes the obligations under the contract arise postpetition. *See id.*

Cases following the *Walat Farms'* rationale have held that when a debtor-in-possession assumes an executory contract (such as the CRP contracts), it becomes a postpetition contract in which the obligations under the contract arise postpetition. Those courts hold that assuming a CRP contract postpetition destroys both the mutuality requirement and the prepetition nature of the contract. Consequently, those cases hold that the requirements of § 553 are not met and that setoff is not permitted.

In contrast, other courts have held that the government may exercise setoff against a debtor's postpetition CRP payments. *See, e.g., Gerth*, 991 F.2d 1428 (2–1 decision; Heaney, J., dissenting) (ASCS entitled to set off its debt for CRP payments against its claims against debtor for certain prepetition debts debtor owed government) [6]; *In re Allen*, 135 B.R. 856 (Bankr.N.D.Iowa 1992) (govern-ment entitled to setoff debtor's price support loan obligation against government's obligation to debtor under CRP agreement); *see also In re Mohar*, 140 B.R. 273 (Bankr. D.Mont.1992) (siding with the court's holding in *In re Allen*).[7] These cases have declined to follow *Walat Farms* and instead rely upon a contrary line of authority which adopts the reasoning found in *Moratzka v. United States of America; Agricultural Stabilization and Conservation Serv. (In re Matthieson)*, 63 B.R. 56 (D.Minn.1986).

In *Matthieson*, the ASCS sought to setoff deficiency payments owed by ASCS to Chapter 7 debtors against prepetition debts owed by each of the debtors to the government. The court found that ASCS' obligation to pay the debtors under the deficiency program contracts was subject to setoff against the government's claim against the debtors. The court held that ASCS' obligations to pay the debtors arose at the time the deficiency program contracts were created and those obligations were prepetition, mutual obligations subject to setoff under 11 U.S.C. § 553. 63 B.R. at 59–60.

### Analysis

As a general observation, the recent trend of cases deciding the issue presented by this case have followed the court's analysis in *Matthieson*, rejecting the analysis in *Walat Farms*. The court also notes that the only court of appeals to decide this issue has held that the ASCS may offset CRP payments, albeit that the decision was not unanimous.

■ Based upon its understanding of the law, the court concludes that the better reasoned approach is found in those cases following the analysis in *Matthieson*. Specifically, the court is persuaded by the majority's analysis in *Gerth*. "[M]ere assumption of an executory contract does not alter when

---

6. However, the court of appeals in *Gerth* remanded the case "for determination of whether ASCS is entitled to relief from the automatic stay under 11 U.S.C. § 362." 991 F.2d at 1436.

7. The bankruptcy court went on to hold, however, that setoff under § 553 is permissive and not mandatory, noting that courts have prohibited setoff in cases where the setoff would significantly harm or destroy the debtor's ability to reorganize. 140 B.R. at 279. The court found that the CRP and deficiency payments were essential to the debtor's ability to reorganize under his Chapter 12 Plan. The court held that the claims of the CCC and the FmHA, to the extent of the dollar amount due the debtor from the CRP and deficiency contract payments, were to be treated as secured claims in the Chapter 12 Plan, and were to be paid under the terms of the Plan in accordance with § 1225(a)(5). 140 B.R. at 280.

the obligations under the contract arose." *Gerth,* 991 F.2d at 1432; *see In re Allen,* 135 B.R. at 864. Moreover, when Buckner assumed the CRP contract he assumed both the benefits and the burdens of that contract. *See id.; In re Godwin Bevers Co., Inc.,* 575 F.2d 805, 807 (10th Cir.1978) (trustee who accepts executory contract takes burdens with benefits).

The court is also satisfied that the government's obligation under the CRP agreement arose prepetition. Buckner's postpetition assumption of the CRP contract does not change when the obligations arose under the contract. Buckner and the government exchanged mutual promises to perform; the government's liability under the CRP contract arose upon execution of the contract. *See Gerth,* 991 F.2d at 1433–1435.

■ Buckner argues that the government's position fails "to recognize the significance of the executory nature of the CRP contract in this case, and the fact that the pre-petition debtor and the debtor-in-possession are separate and distinct entities." This argument essentially challenges whether the requirement of mutuality of § 553 is met. This court disagrees with Buckner's analysis of mutuality and his different entity theory. In *Gerth,* the court of appeals held "that when a debtor-in-possession assumes an executory contract, the debtor and the debtor-in-possession are the same entity for purposes of mutuality under § 553." 991 F.2d at 1436. Furthermore, "if the different entity theory were applicable in a § 553 context, every assumed executory contracts would automatically fail to satisfy the requirement of mutuality. Congress intended to preserve setoff rights by enacting § 553." *Id.* The court of appeals further explained:

> Finally, our holding that the debtor and the debtor-in-possession are the same entity allows § 553 to be interpreted in a manner that gives the entire statute meaning. The plain language of § 553 already prohibits setoff unless the debt owed by the creditor arises prepetition. In other words, it prohibits setoff if the debt is owed to the debtor-in-possession at the time the obligation arises. If the requirement of mutuality were interpreted to pre-

vent setoff based on a distinction between the debtor and the debtor-in-possession, the prepetition requirement would be meaningless.
>
> Because the debtor and the debtor-in-possession are the same entity, we conclude that the mutuality requirement under § 553 deals with the question of whether the creditor who absolutely owed the debtor prepetition is the same party asserting setoff. *See Bevill, Bresler & Schulman,* 896 F.2d [54,] at 59; *Allen,* 135 B.R. at 869. This interpretation gives the mutuality requirement independent meaning, while preventing it from rendering meaningless the requirement that the debt owed by the creditor arise prepetition.

*Id.* Based upon this analysis, the court concludes that the mutuality requirements of § 553 are met.

In sum, the court concludes that the requirements of § 553 are met, and that the government has established its right to setoff the CRP payments under that section.

IT IS THEREFORE ORDERED that the bankruptcy court's April 24, 1991, order denying the United States' right to setoff is reversed. The United States has established its right to setoff under 11 U.S.C. § 553. This case is remanded to the bankruptcy court for a determination of whether the government is entitled to relief from the automatic stay under 11 U.S.C. § 362.