**In the Matter of FRED SANDERS COMPANY, Debtor.**

**MICHIGAN CONSOLIDATED GAS COMPANY, a Michigan corporation, Plaintiff,**

v.

**FRED SANDERS COMPANY, a Michigan corporation, Defendant.**

**Bankruptcy No. 81–00788–B.**
**Adv. No. 83–0167–B.**

United States Bankruptcy Court,
E.D. Michigan, S.D.

Sept. 22, 1983.

Stern, Milmet, Vecchio, Goll & Carnago, P.C. by Edward M. Kalinka, Detroit, Mich., for plaintiff.

Dickinson, Wright, Moon, Van Dusen & Freeman by Karen Colby Weiner, Detroit, Mich., for defendant.

## OPINION

GEORGE BRODY, Bankruptcy Judge.

Michigan Consolidated Gas Company supplied Fred Sanders Company from April 1979 through February 17, 1981 with natural gas, part of which was purchased from Louisiana suppliers. The cost of this gas to Michigan Consolidated included a use tax imposed by the State of Louisiana. This use tax was passed on to Fred Sanders Company. The total charge for gas delivered was $635,435.73. On February 17, 1981, Fred Sanders Company filed a chapter 11 proceeding in the bankruptcy court. At the time of the filing of the petition, the debtor still owed the utility $196,503.36. The rates charged customers by Michigan Consolidated Gas Company are approved by the Michigan Public Service Commission and are based, in part, on the costs to the creditor of the gas delivered. In the event the cost of gas to the utility is reduced by a court order, the utility is required to report to the Michigan Public Service Commission the receipt of any refund or credit as a result of such final order or court decree, and to submit for Commission approval a plan to make equitable refund to its customers of such monies. Michigan Consolidated Gas Company Schedule of Rules, Regulations & Rates Governing the Sale of Gas R. 30E (issued under authority of the Michigan Public Service Commission Oct. 16, 1981). The Michigan Public Service Commission may then "upon its own motion or upon complaint and after notice and hearing ... proceed to order refund to the gas utility's customers of any sums refunded to the said gas utility." M.C.L.A. § 460.6b (West Supp. 1983–84).

On March 29, 1979, eight states sought leave to file a complaint under the Supreme Court's original jurisdiction to challenge the constitutionality of the Louisiana use tax. This motion was granted on June 18, 1979. In May of 1981, the court declared the Louisiana statute unconstitutional, thus reducing the cost of gas to Michigan Consolidated Gas Company. *Maryland v. Louisiana*, 452 U.S. 456, 101 S.Ct. 3075, 69 L.Ed.2d 156 (1981). Pursuant to section 460.6b, the Michigan Public Service Commission, on March 30, 1982 and on July 30, 1982, issued two orders requiring the creditor to recompute the gas charges for the gas delivered from April 1979 through February 17, 1981, and to refund any overcharge to the customer.

The question presented is whether this refund, approved after the filing of the chapter 11 petition, is to be paid to the debtor in possession as a claim arising after the filing of the petition in bankruptcy, or whether the utility may use this refund to offset the prepetition claim owed to it by the debtor.

The question involves the construction to be given to section 553 of the Code. Section 553 recognizes the "right of the creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case ... against a claim of such creditor ... that arose before the commencement of the case." Section 553 essentially preserves a creditor's right to setoff that was found in section 68 of the Bankruptcy Act.

■ A creditor, in order to establish the right to a setoff, must prove: "1) a debt owed by the creditor to the debtor which arose prior to the commencement of the bankruptcy case; 2) a claim of the creditor against the debtor which arose prior to the commencement of the bankruptcy case; and 3) the debt and claim must be mutual obligations." *Waldschmidt v. Columbia Gulf Transmission Co. (In re Fulghum Construction Corp.)*, 23 B.R. 147, 151 (Bkrtcy.M.D.Tenn.1982). The parties agree that the creditor has a claim against the debtor which arose prior to the commencement of the bankruptcy case. However, the debtor in possession contends that the refund claim is a postpetition claim and, therefore, there is no mutuality of obligation.

"Mutuality of obligation is a necessary prerequisite for the right of setoff to accrue." *Framingham Winery, Inc. v. J.A.G., Inc. (In re J.A.G., Inc.)*, 7 B.R. 624, 626 (Bkrtcy.D.Mass.1980). "To be mutual, the debts must be in the same right and be-

tween the same parties, standing in the same capacity." 4 *Collier on Bankruptcy* ¶ 553 at 553–22 (15th ed. 1983).

The debtor in possession maintains that the claims are not mutual because the amount of the refund was not determined until after the filing of the chapter 11 case and that no debt existed until that time. This contention has no merit. The right of setoff may be asserted, even though at the time the petition in bankruptcy is filed one of the debts involved has not been liquidated. In *Luther v. United States,* 225 F.2d 495 (10th Cir.1954), the United States sought to setoff a tax refund due the bankrupt against sums owed the Department of Agriculture. The trustee opposed the claim of setoff, alleging that the debts in question lacked mutuality since the tax refund was not owing to the bankrupt when the petition was filed. Rejecting this argument, the court held that the liability for the refund existed prior to bankruptcy, even though the exact amount of the liability was not determined until after the bankruptcy petition was filed.

> At the intervention of bankruptcy, no claim for refund of the overpayments of income tax had been filed, and no determination had been made in respect to the existence of such overpayments or the amount thereof. But the overpayments had been made and the liability therefor existed. The amount of such liability was not ascertained and determined until later. But it existed in an undetermined amount at the time of the filing of the petition in bankruptcy. And the mere fact that the amount of the liability was not determined until after the intervention of bankruptcy does not deprive the Government of the right to setoff if it otherwise would have existed.

*Id.* at 498.

The refund claim here is rooted in prepetition transactions between the debtor and the utility. All of the facts necessary to determine the debt and the claim occurred prior to the filing of the bankruptcy petition. The right to a refund is not traceable to any postpetition transaction be-

tween the debtor and the utility. The constitutionality of the Louisiana statute was challenged well before the debtor filed its petition subjecting the parties' rights to a final determination by the United States Supreme Court. Although the debtor's entitlement to a refund and the amount of the refund were not determined until after the filing of the bankruptcy petition, this does not destroy the necessary mutuality. The right to a refund was generated by the prepetition relationship between the debtor and the utility and not as a result of any transaction between the debtor in possession and the utility. The refund, therefore, is subject to offset by the prepetition claim of the utility. To hold otherwise would give the debtor in possession an unintended windfall.

An order consistent with this opinion has been entered.