**SMALL BUSINESS ADMINISTRATION, Appellant,**

v.

**Harold RINEHART; Marilyn Rinehart, Appellees.**

No. 88–5442.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1989.

Decided Oct. 6, 1989.

John Koppel, Washington, D.C., for appellant.

Jonathan K. VanPatten, Vermillion, S.D., for appellees.

Before LAY, Chief Judge, and BOWMAN, Circuit Judge, and LARSON,* Senior District Judge.

LARSON, Senior District Judge.

The United States of America, acting through the Small Business Administration (SBA), appeals from the district court's judgment that the SBA violated the automatic stay provisions of the Bankruptcy Code when it "held" without notice a portion of plaintiffs' farm program payments for an administrative setoff after plaintiffs had filed their bankruptcy petition. 88 B.R. 1014. We agree with the district court that SBA's actions violated the automatic stay and affirm the court's award of actual damages, costs, and attorney's fees in favor of plaintiffs. In view of the Supreme Court's decision in *Hoffman v. Connecticut Department of Income Maintenance*, —— U.S. ——, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989), however, we must reverse the district court's award of punitive damages [1] on the ground that section 106(c) of the Bankruptcy Code does not authorize the award of such damages against the United States.

I.

For almost forty years, plaintiffs Harold and Marilyn Rinehart operated a farming and ranching business in South Dakota. In 1981, they received a loan from the SBA in

---

* The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. SBA did not appeal the district court's award of actual damages, costs, or attorney's fees. It appealed only the question of whether punitive damages were properly awarded.

the amount of $103,000 in exchange for a second mortgage on certain property and an executed promissory note. In January, 1982, the principal was increased to $171,-600, in exchange for a third mortgage on certain other property and an executed "modification" of the promissory note. Under the terms of the modified note, the Rineharts were to make twenty-four annual payments of $12,177 on January 1 of each year, commencing on January 1, 1983.

When plaintiffs failed to make the 1986 payment, the SBA declared a default and accelerated the debt. In January, 1987, the SBA notified plaintiffs that it would seek an administrative offset of its claim against the Department of Agriculture (USDA) crop payments which plaintiffs would otherwise receive. On February 5, SBA requested USDA to offset the crop payments. Five days later, on February 10, SBA advised USDA that its request was premature, because plaintiffs' counsel had suggested they "try to work out a settlement."

Despite SBA's request that USDA not take action to offset the funds "until such time as this matter has been resolved," on February 16 SBA received a letter from the USDA approving a setoff of $161,563.06 against farm program payments due or to become due to plaintiffs. Plaintiffs filed a Chapter 11 bankruptcy petition on February 27, 1987, and continued to operate their family farming and ranching business as debtors-in-possession. SBA again contacted USDA about postponing any administrative offset.

On March 5, USDA acknowledged by written memorandum SBA's request to forego any offset pending notification by the SBA. On March 10, 1987, plaintiffs' attorney sent letters to all creditors, including SBA, advising them of the bankruptcy filing and reminding them of the automatic stay provisions of the Bankruptcy Code. On March 18, 1987, SBA filed a proof of claim with the bankruptcy court in the amount of $163,250.24.

Despite the pending bankruptcy proceeding, on April 1, 1987, USDA issued a check to SBA as plaintiffs' first installment of Agricultural Stabilization Service Commodity Credit Corporation (ASCS–CCC) farm program payments.[2] When SBA received the check on April 6, it decided to "hold" the money. SBA gave no notice to plaintiffs or to their counsel that it had received or was holding the ASCS–CCC check. When plaintiffs did not receive their expected farm program payment, after preliminary investigation, they filed a motion for an order to show cause against the Farmers Home Administration (FmHA) on May 8, 1987. FmHA replied that it had not requested the offset, but that the SBA may have done so.

On May 11, SBA's attorney wrote a memorandum to SBA's "collateral cashier" directing that the check from USDA should be held "pending resolution of the [bankruptcy] litigation and advice of counsel." On May 15, the SBA filed a motion for relief from stay to offset the ASCS–CCC payment. Shortly thereafter, plaintiffs filed an amended motion for an order to show cause against the SBA. A hearing was held on June 1, 1987, and the Bankruptcy Court issued its memorandum decision finding the SBA had violated the automatic stay on July 24, 1987. An order confirming the memorandum decision was entered September 11, 1987.

It was only after this order that a check representing the first ASCS–CCC program payment was finally delivered to plaintiffs. On appeal to the district court, the bankruptcy court's finding that the SBA had willfully violated the stay was affirmed. This appeal followed.

## II.

█ SBA argues on appeal that its actions did not violate the automatic stay. We cannot agree. Section 362 of the Bankruptcy Code provides that a filing of a voluntary petition in bankruptcy results in an automatic stay of most actions by credi-

---

**2.** The affidavit of the ASCS County Executive Director who issued the check states that the USDA's March 5, 1987, memorandum "was

missed" at the time the check was issued, and that if he had seen the memorandum "no check would have been issued to SBA."

tors to satisfy their claims against a debtor, including (1) "any act ... to exercise control over property of the estate," and (2) "the setoff of any debt owing to the debtor." 11 U.S.C. § 362(a)(3) & (7). The automatic stay is fundamental to the reorganization process, and its scope is intended to be broad. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6296–97; *United States v. Norton,* 717 F.2d 767, 770–71 (3d Cir.1983).

A primary purpose of the automatic stay provision is to afford debtors in Chapter 11 reorganizations an opportunity to continue their businesses with their available assets. H.R.Rep. No. 595, 95th Cong., 1st Sess. 183 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News at 6144; *In re Archer,* 34 B.R. 28, 29–30 (Bankr.N.D.Tex.1983).

■ The farm program payments held by the SBA in this case represented deficiency corn crop payments for the 1986 crop year. Like many farmers, plaintiffs needed the farm program funds to meet expenses for fuel, fertilizer, and seed at the beginning of the 1987 crop season. *See In re Hazelton,* 85 B.R. 400, 404–05 (Bankr.E. D.Mich.), *rev'd on other grounds,* 96 B.R. 111 (E.D.Mich.1988). SBA unilaterally denied the plaintiffs as debtors-in-possession the use of these funds without even giving them notice that SBA had obtained the funds until after plaintiffs had filed an order to show cause with the bankruptcy court.

■ SBA now claims its actions were authorized by section 553(a) of the Code, which preserves the right of a creditor to offset a mutual debt owed by the creditor against a claim of the creditor against the debtor. Section 553 is, however, by its terms subject to the automatic stay provisions of section 362.[3] SBA argues its administrative "hold" on the plaintiffs' funds does not violate the automatic stay, be-

cause it did not actually apply the check to the plaintiffs' debt.

This argument is inconsistent with SBA's own characterization of its actions as an administrative offset. SBA requested USDA to "setoff" the farm program payments, and USDA attempted to do just that. SBA cites no statutory or regulatory authority for its alleged "administrative freeze," and has not denied that it sought to act pursuant to its offset powers. *See* 31 U.S.C. § 3716; 13 C.F.R. § 140.5.

■ Regardless of whether SBA's "hold" is an "offset" under section 362(a)(7) of the automatic stay provisions, however, it surely is an act "to exercise control over the property of the estate," which is forbidden by section 362(a)(3). We agree with those courts which have held that a governmental agency violates the automatic stay when it "holds" or "freezes" payments the debtor is otherwise entitled to receive. *See United States v. Reynolds,* 764 F.2d 1004, 1007 (4th Cir. 1985); *United States v. Norton,* 717 F.2d at 773; *In re Woloschak Farms,* 74 B.R. 261, 264 (Bankr.N.D.Ohio 1987). *See also In re Wildcat Construction Co.,* 57 B.R. 981, 984–85 (Bankr.D.Vt.1986).

While some courts have held that a bank which places an administrative freeze on a debtor's account does not violate the automatic stay, *see, e.g., In re Air Atlanta,* 74 B.R. 426, 427 (Bankr.N.D.Ga.), *aff'd,* 81 B.R. 724 (N.D.Ga.1987), our holding with respect to the SBA's actions in this case is consistent not only with the express language of the Code, but also with the policy behind Chapter 11 proceedings.

From the perspective of a debtor in reorganization, a "freeze" or "hold" is the same as a setoff in that it denies the debtor access to funds which may be critical to the debtor's survival. *See* Note, *Freeze and Recoupment: Methods For Circumventing the Automatic Stay?* 5 Bankr.Dev.J. 85, 102 (1987). The SBA's position that it

---

**3.** Section 553(a) provides:

Except as otherwise provided in this section and in sections 362 and 363 ... this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the

debtor that arose before the commencement of the case ... against a claim of such creditor that arose before the commencement of the case.

11 U.S.C. § 553(a).

may "hold" farm program payments to preserve its right of setoff denies to farmer-debtors the funds they need to reorganize their farming operations without any supervision or oversight by the bankruptcy court. *Cf. Norton*, 717 F.2d at 773–74. We find no indication in the Bankruptcy Code that Congress intended such a result.

The SBA, as any other creditor, is not without recourse to protect its interests. It does not even face the potential dilemma of a bank under section 542(c) of the Code, *see generally* Note, *supra*, at 92, 98–99, but may simply request relief from the automatic stay. *See In re Lundell Farms*, 86 B.R. 582, 591–93 (Bankr.W.D.Wis.1988); *In re Hazelton*, 85 B.R. at 402.

Giving effect to the automatic stay thus does not defeat the SBA's right of setoff, it merely stays its enforcement, as Congress intended, pending an orderly examination of the debtor's and the creditor's rights. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 342 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News at 6298; *Reynolds*, 764 F.2d at 1006; *In re Wildcat Construction Co.*, 57 B.R. at 983. Whether the stay should be lifted in each case lies in the sound discretion of the bankruptcy court.

Because SBA exercised control over the funds at issue from April 6, 1987, until after the bankruptcy court's order on September 11, 1987, without seeking relief from the automatic stay or even informing plaintiffs that it had the funds until after an order to show cause was filed, we affirm the district court's judgment that SBA violated provisions of the automatic stay in this case.

### III.

Although SBA has not challenged the district court's award of compensatory damages, attorney's fees, and costs, it has appealed the district court's award of punitive damages. Section 362(h) of the Code provides that an individual injured by any willful violation of the automatic stay "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h).

SBA argues the facts of this case do not present "appropriate circumstances" justifying a punitive damage award. *See United States v. Ketelsen*, 880 F.2d 990, 993 (8th Cir.1989). SBA further contends that, in any event, such an award is barred by the government's sovereign immunity. The district court affirmed the bankruptcy court's award of punitive damages based on the SBA's willful violation of the automatic stay, but was not presented with the government's sovereign immunity argument.

A waiver of sovereign immunity is a prerequisite for jurisdiction. *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983). The only possible waiver of the government's sovereign immunity which would confer jurisdiction to award the punitive damages at issue in this case is contained in section 106(c) of the Bankruptcy Code.[4]

Subsequent to the submission of this appeal, the Supreme Court held in *Hoffman v. Connecticut Department of Income Maintenance*, —— U.S. ——, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989), that section 106(c) does not authorize monetary recovery, but applies only to declaratory and injunctive relief, binding governmental units to issues determined by the bankruptcy court even when those units did not appear before the court. *Id.* at 2823.

---

4. Section 106 provides:
   (a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.
   (b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—
   (1) a provision of this title that contains "creditor," "entity," or "governmental unit" applies to governmental units; and
   (2) a determination by the court of an issue arising under such a provision binds governmental units.
11 U.S.C. § 106.

While the precise question in *Hoffman* was the extent to which the states' eleventh amendment immunity had been abrogated under section 106(c), the Court's opinion refers to the federal government as well, and its analysis is equally applicable to a waiver of sovereign immunity by the federal government. *See id.*

Because the Court has interpreted section 106(c) so as not to waive the government's sovereign immunity with respect to monetary awards, we have no alternative but to reverse the district court's punitive damages award in this case.

## IV.

For all of the foregoing reasons, we affirm the district court's judgment that SBA violated provisions of the automatic stay by "holding" the farm program payment which otherwise should have gone to plaintiffs as debtors-in-possession for the operation of their farming and ranching business. We reverse the court's award of punitive damages as barred by the government's sovereign immunity, however, based on the Supreme Court's narrow interpretation of section 106(c) of the Bankruptcy Code in the *Hoffman* case.