**In re Marjorie MOHAR, Debtor.**

**Bankruptcy No. 91–41670–012.**

United States Bankruptcy Court, D. Montana.

May 12, 1992.

Gary S. Deschenes, Great Falls, Mont., for debtor.

Frank D. Meglen, Asst. U.S. Atty., Billings, Mont.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this Chapter 12 case, three motions which involve common facts are pending for decision. The first matter is the Debtor's motion to find a violation of the automatic stay under 11 U.S.C. § 362 against the Agriculture Stabilization and Conservation Service (ASCS). The second matter deals with two motions filed by CCC and FmHA for relief from the automatic stay to allow a setoff of government funds due the Debtor for payment against a pre-petition debt due FmHA and CCC by the Debtor. Hearing on the matters was held on March 24, and April 21, 1992, briefs have

been filed, and the matters are ready for decision.

The facts show that on December 2, 1986, the Debtor received a loan from FmHA, which was reamortized on February 24, 1989. On February 16, 1989, the Debtor executed two Conservation Reserve Program (CRP) contracts, number 186 and 155A, providing for annual payments on October 1 of each year for ten years. Contract 155A placed into CRP 941.6 acres of farm land, for which the Debtor is to receive $40 per acre, for an annual payment of $37,664. CCC, which administers CRP payments, through the Agriculture Stabilization and Conservation Service (ASCS), has administratively asserted that part of the payment due under contract 155A is payable to another owner, in the sum of $904, with the balance due the Debtor. Under contract 186, the Debtor is due $2,100.40.

On April 15, 1991, the Debtor executed forms to participate in the 1991 Price Support and Production Adjustment Program, also known as the Wheat, Feed and Grain Deficiency Program. The Debtor took out of production 234.8 acres of wheat and 189.8 acres of barley. As of September 1, 1991, the Debtor earned $15,393 under this program. The CCC employee in charge of the program raised a question whether the Debtor's son was entitled to the payment by reason of an unrecorded Quit Claim Deed, evidently executed by the Debtor, but by February 18, 1992, the Debtor reaffirmed the agreement and for the purposes of the pending motions, she is entitled to the proceeds absent the request for setoff by FmHA and CCC.[1]

By reason of the default of the FmHA promissory note, FmHA on October 15, 1992, after prior notice to the Debtor, wrote ASCS requesting an administrative setoff of the CRP and deficiency program payments due the Debtor. On that same date, the Debtor filed a Chapter 12 Bankruptcy Petition. CCC filed a Proof of Claim in the Chapter 12 case showing a debt due that agency of $6,597.87, arising out of over payments to the Debtor of prepetition wheat and barley deficiency payments, for which the Debtor executed a promissory note on December 14, 1990. Under that note, it is provided the CCC installment payment may be satisfied by way of setoff of any government payments due the Debtor. The FmHA and CCC motions for relief from the automatic stay were filed on March 20, 1992, seeking the right to set off the 1991 CRP and deficiency payments against the claims of each agency. Prior to that date, the ASCS refused to turn over to the Debtor the 1991 funds due her from the above described government programs. By reason of such refusal, the Debtor claims the ASCS violated the provisions of § 362(a) of the Code by exercising control over property of the estate. Since all pending motions relate to the same operative facts, a decision for each motion will be addressed in this single order.

## A. MOTION FOR SANCTIONS AGAINST ASCS.

■ The Debtor filed a Motion for Sanctions under § 362(h) claiming the Montana Agricultural Stabilization and Conservation Service (ASCS) Office, which administers the CRP and deficiency programs, violated the provision of § 362(a)(7), which stays "the setoff of any debt owing to the Debtor that arose before the commencement of the case under this title against any claim against the Debtor." In addition, § 362(a)(3) results in an automatic stay of most actions by creditors to satisfy their claims against a debtor, including "any act ... to exercise control over property of the estate." The holding of *Small Business Administration v. Rinehart,* 887 F.2d 165 (8th Cir.1989) is decisive of the present motion for sanctions. *Rinehart* holds:

---

1. *Braniff Airways, Inc. v. Exxon,* 814 F.2d 1030, 1036 (5th Cir.1987) citing *Matter of Nickerson & Nickerson, Inc.,* 62 B.R. 83 (Bankr.D.Neb.1986) states:

The court stated: "[T]he right to setoff may be asserted in bankruptcy even though one of the debts involved is absolutely owing but not presently due when the petition is filed" ... The debt owed the Debtor does not have to be calculated prior the filing of the bankruptcy petition in order for setoff to be available to a creditor.

SBA now claims its actions were authorized by section 553(a) of the Code, which preserves the right of a creditor to offset a mutual debt owed by the creditor against a claim of the creditor against the debtor. Section 553 is, however, by its terms subject to the automatic stay provisions of section 362. SBA argues its administrative "hold" on the plaintiffs' funds does not violate the automatic stay, because it did not actually apply the check to the plaintiffs' debt.

This argument is inconsistent with SBA's own characterization of its actions as an administrative offset. SBA requested USDA to "setoff" the farm program payments, and USDA attempted to do just that. SBA cites no statutory or regulatory authority for its alleged "administrative freeze," and has not denied that it sought to act pursuant to its offset powers. *See* 31 U.S.C. § 3716; 13 C.F.R. § 140.5.

Regardless of whether SBA's "hold" is an "offset" under section 362(a)(7) of the automatic stay provisions, however, it surely is an act "to exercise control over the property of the estate," which is forbidden by section 362(a)(3). We agree with those courts which have held that a governmental agency violates the automatic stay when it "holds" or "freezes" payments the debtor is otherwise entitled to receive. *See United States v. Reynolds,* 764 F.2d 1004, 1007 (4th Cir.1985); *United States v. Norton,* 717 F.2d [767] at 773 [ (3d Cir.1983) ]; *In re Woloschak Farms,* 74 B.R. 261, 264 (Bankr.N.D. Ohio 1987). *See also In re Wildcat Construction Co.,* 57 B.R. 981, 984–85 (Bankr.D.Vt.1986). *Id.* at 168.

*Rinehart* further states that SBA, like FmHA and CCC in this case, is not without recourse to protect its interest, since it may do so by timely request for relief from the automatic stay. That brings us to the second issue before the Court, namely, the right of FmHA and CCC to setoff.

Before reaching that issue, the evidence presented by the Debtor as to the use of the funds, and damages resulting from the administrative motion is sparse at best. Even though § 362(h) makes it mandatory that damages be assessed when a violation of § 362(a) occurs, the Debtor still has the burden to prove damages. The Debtor testified only that she did not receive the funds as in prior years. No evidence was offered by the Debtor as to the expenses incurred in prosecuting the pending motion, or the result of ASCS holding the funds. The most I can conclude from the record is that ASCS/CCC violated the stay, and if no setoff is granted, the funds must be turned over to the Debtor.

## B. MOTIONS OF FmHA AND CCC TO SETOFF UNDER § 553.

The March 20, 1992, motions of FmHA and CCC seek an order lifting the stay to allow setoff of the 1991 CRP and deficiency payments against each claim. The Debtor resists the motion on several grounds, including lack of mutuality.

*In re Rahn,* 7 Mont.B.R. 162, 163 (Bankr. Mont.1989) states:

Section 553 provides, in pertinent part, that the filing of a bankruptcy:

"does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of this case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, * * *."

As a general rule, § 553 allows a creditor the same right of setoff which existed prior to bankruptcy. However, the right of setoff is neither automatic or self-executing, nor is it mandatory. *In re IML Freight, Inc.,* 65 B.R. 788, 792 (Bankr. Utah 1986); *In re Sandman,* 5 Mont.B.R. 76, 78 (Bankr.Mont.1987). Whether a setoff is allowed or disallowed ultimately rests on the sound discretion of the Bankruptcy Court. 4 *Collier on Bankruptcy,* § 553.02, at 553–10 to 553–11. *Sandman,* supra at 78.

In order to establish a right to a setoff under § 553, a creditor must establish:

1. A debt owed by the creditor to the debtor which arose prior to the commencement of the bankruptcy case;

2. A claim of the creditor against the debtor which arose prior to the commencement of the bankruptcy case; and

3. The debt and claim are mutual obligations.

*In re Fred Sanders Co.*, 33 B.R. 310 (Bankr.E.D.Mich.1983); *In re Taylor Motors*, 60 B.R. 760 (Bankr.Nev.1986); *In re Brooks*, 70 B.R. 368 (Bankr.E.D.Wis. 1987).

*In re Sandman*, 5 Mont.B.R. at 78, states: "[B]efore a setoff can be made against the debts owed by a petitioner in bankruptcy, a creditor must seek relief from the automatic stay. *IRS v. Norton*, 717 F.2d 767, 771 (3rd Cir.1983)."

The Debtor argues that mutuality does not exist, i.e., there are no pre-petition debts and claims because the Debtor under Chapter 12 is not the same Debtor pre-petition, that the CRP contract is executory and upon assumption creates a post-petition debt, and the funds held by ASCS are not funds by the same agency which seeks setoff.

■ As to the latter argument, I adopt the position taken by the U.S. District Court of South Dakota, in *U.S. Small Business Administration v. Rinehart*, 88 B.R. 1014 (D.S.D.1988), aff'd and rev'd on other grounds, 887 F.2d 165 (8th Cir.1989).

This Court agrees that in deciding whether federal agencies stand in the same capacity for section 553 offsets, there is no authority for distinguishing between the capacity of parties in relation to each other outside of bankruptcy and that capacity following the filing of bankruptcy petition.

After citing federal regulations (7 C.F.R. § 13.2(b), 13.4(f) and 13.5(c)), together with 31 U.S.C. § 3716(c)(2), *Rinehart* decides, based on *In re Thomas*, 84 B.R. 438 (Bankr.N.D.Tex.1988); *In re Britton*, 83 B.R. 914 (Bankr.S.D.N.C.1988) and *In re Hazelton*, 85 B.R. 400 (Bankr.E.D.Mich. 1988), that there is but one federal government, made up of independent agencies, which agencies stand in the same capacity to satisfy the mutuality of parties concept of the setoff doctrine.

■ Next, the Debtor states that mutuality does not exist because Majorie Mohar, the pre-petition Debtor is different than Marjorie Mohar, the Debtor–In–Possession. Allied with this argument is that the CRP contract is executory which must be assumed under § 365 of the Code, and upon assumption becomes, not a pre-petition debt, but a post-petition obligation, which defeats mutuality. On this issue, recognizing a diversity of opinion among the courts, I side with *In re Allen*, 135 B.R. 856 (Bankr.N.D. Iowa 1992). *Allen* recites at length the contractual provisions of a CRP contract, which are identical to the CRP contract provisions in the case *sub judice*. *Id.* at 858–859. *Allen* holds:

The debtor points out that a number of cases have found that by assuming a CRP contract, "the contract becomes a postpetition contract of the estate." [*In re*] *Fryar*, 93 B.R. [101] at 104 [ (Bkrtcy.W.D.Tex.1988) ] (citing *In re Ridgewood Sacramento, Inc.*, 20 B.R. 443 (Bankr.E.D.Cal.1982)); *see also* [*In re*] *Gore*, 124 B.R. [75] at 78 [ (Bkrtcy.E.D.Ark.1990) ] ("assumed CRP contract becomes a postpetition contract under which the debtors-in-possession are obligated to perform").

\*　　\*　　\*　　\*　　\*　　\*

This Court does not believe that any portion of § 365 allows for this result. To find that assuming the contract changes the effective date obligations arise under the contract to a postpetition time essentially would allow the debtor to modify the contract. Under the CRP contract, there is a provision stating that the effective date for the contract is the prepetition date that it was signed. Nothing in § 365 states or even suggests that the assumption of a contract allow the debtor to escape or modify terms which do not work to its benefit. Neither the word "assume" nor any other phrase in § 365 suggest that assuming a contract allows the debtor to do anything other than carry on with the contract according to its terms, including provisions defining the effective date. *Id.* at 863–64.

Thus, the mere assumption of the CRP contract does not give rise to a post-petition obligation so as to destroy mutuality.

*Allen* further discussed when the CCC obligation to pay arises under the CRP contract, and following Iowa contract law (*H.L. Munn Lumber Co. v. City of Ames*, 176 N.W.2d 813, 816 (1970)) together with the *Restatement Second of Contracts* § 266, holds, "the very structure of the contract, requiring yearly payments by CCC, and continuous performance by the debtor in maintaining vegetable covers, implementing the conservation plan, etc., do not conform to standards for a contract based on condition precedent," but rather, "indicates that CCC's obligation to pay each year is in return for the full performance of the 10 year commitment from the Debtor to keep the land out of production." *Id.* at 866. The CRP contract is thus one of mutual promises, not a contract predicated upon conditions precedent, which contractual obligations arise at the date of the contract. *Id.* at 866.

Montana law is to the same effect. *Atlantic Pacific Oil Co. v. Gas Development Co.*, 105 Mont. 1, 69 P.2d 750 (1937) holds:

A "condition precedent" is one that is to be performed before the agreement becomes effective, and which calls for the happening of some event or performance of some act after the terms have been agreed on, before the contract shall be binding on the parties. (Citing cases).

\* \* \* \* \* \*

"Condition subsequent" operates upon the estate already created and vested; rendering it liable to be defeated if condition is broken. (Citing case).

\* \* \* \* \* \*

A condition precedent or subsequent is not a question of phrase or form but of the intention of the parties. (Citing cases).

\* \* \* \* \* \*

Conditions are to be strictly construed. (Citing cases). When in doubt whether a clause in a deed is a condition precedent, a condition subsequent, or a covenant, courts will construe it as a covenant. (Citing cases). A "covenant" is an agreement between parties to do or not to do a particular act. (Citing cases).... The difference between a covenant and a condition relates largely to the remedy. If the breach of the agreement pertains to the validity of the instrument or is a ground of forfeiture, it is a condition; but, if the remedy for breach is merely an action at law for damages, then the agreement is a covenant. *Id.* 69 P.2d at 755–757.

The CRP contract, as *Allen* points out, contains a liquidated damages clause which allows CCC to suspend performance and recover specified damages from the Debtor.

"In short, damages for breach are available only when a binding promise contract exists and not when a contract predicated upon unfulfilled condition precedent exists." *Id.* at 866.

*Atlantic Pacific* is to the same legal effect. Where from a consideration of the whole instrument, it is clear that one party relies upon his remedy and not upon the performance of conditions by the other, such performance is not a "condition precedent"; but where the intention was to rely upon the performance of the promise, and not on the remedy, the performance is a "condition precedent". *Id.* 69 P.2d at 757.

*Allen* explains the CRP contract, in rejecting *In re Walat Farms, Inc.*, 69 B.R. 529 (Bankr.E.D.Mich.1987), *In re Gore*, 124 B.R. 75 (Bankr.E.D.Ark.1990) and *In re Evatt*, 112 B.R. 405 (Bankr. W.D.Okla.1989), *aff'd*, 112 B.R. 417 (W.D.Okla.1990), as one where those cases ignore the remedy clause of the contract, which allows the nonbreaching party (CCC) to both suspend its performance if the breach is material and sue for damages. That is precisely the remedy provision of the CRP contract.[2] *Id.* at 867. Conse-

---

2. Paragraph 15 of the CRP contract provides in part under title "Liquidated Damages":

It is mutually agreed that in the event the contract is breached, terminated, or the participant fails to comply with the acceptance

quently, the CCC debt to the Debtor arose pre-petition under the CRP contract.

■ Next, the Debtor has alluded to the different entity theory citing *In re Gore*, supra, which holds a post-petition debtor does not stand in the same shoes as a pre-petition debtor for offset purposes. *Allen* succinctly disposes of this argument.

CCC points out, however, that the U.S. Supreme Court previously has rejected the separate or different entity theory in *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 528, 104 S.Ct. 1188, 1197, 79 L.Ed.2d 482 (1984). The *Bildisco* Court observed that if the debtor-in-possession:

> were a wholly "new entity", it would be unnecessary for the Bankruptcy Code to allow it to reject executory contracts, since it would not be bound by such contracts in the first place. For our purposes, it is sensible to view the debtor-in-possession as the same "entity" which existed before the filing of the bankruptcy petition, but empowered by virtue of the Bankruptcy Code to deal with its contracts on property in a manner it could not have employed absent the bankruptcy filing.

465 U.S. at 528; 104 S.Ct. at 1197. A number of courts subsequently have found that the above quoted language from *Bildisco* effectively has invalidated the new entity theory in bankruptcy. *In re Ontario Locomotive & Ins. Ry. Supplies*, 126 B.R. 146, 147 (Bkrtcy. W.D.N.Y.1991) (Observing that the *Bildisco* court "would appear to have laid to rest the 'separate entity' doctrine for all time."); *[In re] Affiliated Food Stores*, 123 B.R. [747] at 748–49 [ (Bkrtcy.N.D.Tex.1991) ] (discussing *Bildisco* and citing to numerous other cases rejecting the new entity theory; *In re Mohawk Industries, Inc.*, 82 B.R. 174, 176–77 (Bankr.D.Mass.1987) (new entity theory no longer supported after *Bildis-*

*co* ). The *Affiliated Food Stores* case specifically rejected the theory in a § 553 setoff analysis. *Id.* at 867–868.

From the above, I reject the Debtor's arguments that mutuality is lacking. The debts between the CCC and the Debtor on the CRP and deficiency contracts arose pre-petition, as did the claims between FmHA, CCC and the Debtor. The right of setoff is fixed at the petition date under § 553. This does not, however, end the inquiry and allow setoff since § 553 is permissive and not mandatory. *Rahn,* supra. "Whether the stay should be lifted in each case lies in the sound discretion of the bankruptcy court." *Rinehart,* 887 F.2d at 169. *See, also, Allen,* supra at 870. (Courts have prohibited setoff in cases where the setoff would significantly harm or destroy the debtor's ability to reorganize.)

■ It is quite apparent from the Debtor's Chapter 12 Plan that the CRP and deficiency payments are essential to allow the Debtor to reorganize. *In re Blanton,* 105 B.R. 321, 337 (Bankr.E.D.Va.1989), after discussing the two classes of cases where setoff is denied, states:

> In one class of cases, the creditor is denied the immediate right of setoff, but the setoff claim is treated as a secured claim as provided by Bankruptcy Code Section 506(a). This situation usually arises in Chapter 11 cases where the right of setoff is acknowledged, but the debtor needs the funds owed by the creditor in order to have any chance at a successful reorganization. The creditor's setoff rights are thus deferred but preserved. (Citing cases).

A setoff elevates an unsecured claim to a secured status. *Lee v. Schweiker,* 739 F.2d 870, 875 (3rd Cir.1984). Since I conclude the 1991 funds are necessary for effective Chapter 12 reorganization by the Debtor, I

---

provisions of paragraph 14, the CCC will suffer substantial damages which are impossible to calculate. The purpose of CRP is to control erosion of highly erodible lands thereby protecting the nation's soil and water resources for succeeding generations. * * * Therefore, in addition to the other penalties, interest or damages due, for breach of contract pre-

scribed in this contract, the participant or person submitting a CRP–1, agrees to pay an amount equal to the product by multiplying: (1) 25 percent of the annual rental payment rate specified in item 6 on Form CRP–1 by, (2) the number of acres which are the subject of the contract, as liquidated damages and not as a penalty, * * *."

hold the claims of CCC and FmHA, to the extent of the dollar amount due the Debtor from the CRP and deficiency contract payments, are to be treated as secured claims in the Chapter 12 Plan, and paid under the terms of the Plan in accordance with § 1225(a)(5).

## CONCLUSION

I conclude the ASCS office violated the provisions of § 362 of the Bankruptcy Code, and by reason of such violation, I direct the funds held by the ASCS office be distributed forthwith to the Debtor. I further conclude that CCC and FmHA are entitled to setoff status under § 553 of the funds held by ASCS, but such funds shall not be paid over to those agencies. Rather, the claims of those agencies shall be treated as secured claims under § 506(a) of the Code and the Chapter 12 Plan shall provide for repayment of such secured claims pursuant to § 1225(a)(5).

IT IS ORDERED the Debtor's Motion For Sanctions against ASCS is granted.

IT IS FURTHER ORDERED the motions of FmHA and CCC for Relief From The Automatic Stay are denied.