**In re Joseph M. LINCOLN, and Sandra A. Lincoln, Debtors.**

**Bankruptcy No. 92–40607–12.**

United States Bankruptcy Court, D. Montana.

Sept. 8, 1992.

Keith A. Maristuen, Bosch, Kuhr, Dugdale, Martin & Kaze, Havre, Mont., for debtors.

George F. Darragh, Jr., Asst. U.S. Atty., Great Falls, Mont., for FmHA.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

After due notice hearing was held at Great Falls on August 18, 1992, on the Motion For Relief From The Automatic Stay And Request For Setoff filed August 5, 1992, by the Farmers Home Administration ("FmHA"). The Debtors filed an objection on August 14, 1992, and appeared at

the hearing in opposition to the motion. FmHA was represented at the hearing in support of its motion. Testimony of Debtor Joseph M. Lincoln and FmHA's Roger Smith was heard, and several exhibits were admitted into evidence. At the close of the hearing this Court granted each party five (5) days to file simultaneous briefs, and took the matter under advisement. The briefs having now been filed, this Court deems this matter submitted and ripe for decision.

At issue in this case is whether to grant FmHA a setoff of government funds due the Debtors under Conservation Reserve Program (CRP) contracts, for payment against a pre-petition debt due FmHA by the Debtors. For the reasons set forth below, this Court denies the motion and request for setoff.

The Debtors filed a voluntary Chapter 12 Petition on April 17, 1992. The Statement and Schedules were filed May 7, 1992. FmHA is listed at Schedule D as a secured creditor for farm loans secured by a second lien on the Debtors' real estate and a first lien on chattels. The amount of FmHA's claim is scheduled as $543,972 with $453,414 of the claim unsecured. Another scheduled secured creditor is Farm Credit Services ("FCS"), with a secured claim listed in the sum of $253,796.

FmHA filed a Proof of Claim on July 27, 1992, asserting a secured claim in the sum of $477,240.01. The FmHA claim arises from a series of initial, subsequent, rescheduled, or consolidated loans to the Debtors beginning in 1981 through 1986. The Debtors executed mortgages to FmHA for these loans on their real property, crops, vehicles, equipment, livestock, and brands. FmHA asserts its secured status based upon these mortgages. However, FmHA's mortgages acknowledge that the Debtors' real property is subject to the prior recorded mortgages of FCS. FmHA therefore argues in its brief and motion that secured status for its claim arises out of its right to setoff against the Debtors' CRP contract payments described below pursuant to 11 U.S.C. § 553 and this Court's holding in *In re Mohar*, 140 B.R.

273, 280, 10 Mont.B.R. 501, 513 (Bankr. Mont.1992).

FCS filed three (3) Proofs of Claim on July 24, 1992, which claim a total secured claim in the sum of $248,183.44. This debt arises from notes and mortgages executed by the Debtors to FCS or its predecessor, the Federal Land Bank of Spokane, in 1968, 1975, and 1977. The mortgages were duly recorded in the respective years. A provision in each of the FCS mortgages provides that, in addition to the Debtors' real estate, the Debtors granted FCS all leases, permits, licenses or privileges then held or later issued to the Debtors by the United States of America or any department or agency thereof. This clause bears upon the issue discussed below of the relative priority positions of FmHA and FCS against the Debtor's CRP contract payments.

■ No objections to claims have been filed in this case under F.R.B.P. 3007 or 3012. Therefore, the Proofs of claim constitute *prima facie* evidence of the validity and amount of the claims. *In re Vanden Bos*, 9 Mont.B.R. 419, 421 (Bankr.Mont. 1991). The Proofs of Claim show that FCS's liens against the Debtors' real property have priority over FmHA's lien on real property.

In Schedule D under "Executory Contracts" the Debtor lists the "U.S. Department of Agriculture, Hill County ASCS," as the other party to an CRP contracts on approximately 913 acres at $40 per acre. Exhibits E, F, G, H, I, and J, admitted into evidence without objection, consist of several ten-year CRP contracts entered into by the Debtors beginning in 1987, 1988, and 1991. The parties agree that the total annual CRP payments under these contracts is $41,450 until 1997 when the first contract expires. The parties also agree that the total future payments to be received under the CRP contracts in which the Debtors have an interest is $280,140.

Joseph Lincoln testified that the Debtors are in default on the FCS loans, and that the Debtors need the CRP contract payments to pay both the FCS loans and the FmHA loans. Lincoln testified that the

majority of the Debtor's farm income is from the CRP contracts. This evidence is uncontroverted. It is also undisputed that the Debtors are in default on the FmHA debt, as shown by Exhibits L and M, which are notices of acceleration.

The evidence shows that FmHA proceeded to request an administrative offset against the Debtors' CRP contract payments in March of 1992. The Debtors requested an appeal of the administrative offset in April of 1992, shown by Exhibit 1.

■ In spite of the appeal, FmHA proceeded to request administrative offset on April 17, 1992, which is the date the Debtors filed their Chapter 12 Petition. The parties dispute the effect of FmHA's request for administrative offset in Exhibit B. However, this Court notes that the Debtors have not filed a motion for sanctions under 11 U.S.C. § 362(h), and offered no evidence of damages suffered or expenses incurred as a result of FmHA's letter on the petition date. Thus, as in *Mohar*, the most this Court could conclude is that if the setoff is granted to FmHA, then the CRP contract payments must be turned over to the Debtors. 140 B.R. at 276, 280, 10 Mont.B.R. at 505, 513.

The Debtors urge the Court in their brief to re-examine the rule of setoffs fashioned in *Mohar*, 140 B.R. at 276–280, 10 Mont. B.R. at 505–513. This Court rejects that request. *Mohar* sets forth the rule on setoffs as follows:

> *In re Rahn*, 7 Mont.B.R. 162, 163 (Bankr.Mont.1989) states:
>
> > Section 553 provides, in pertinent part, that the filing of a bankruptcy:
> >
> > "does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of this case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, * * *."
> >
> > As a general rule, § 553 allows a creditor the same right of setoff which existed prior to bankruptcy. However, the right of setoff is neither automatic or self-executing, nor is it mandatory.

*In re IML Freight, Inc.*, 65 B.R. 788, 792 (Bankr.Utah 1986); *In re Sandman*, 5 Mont.B.R. 76, 78 (Bankr.Mont. 1987). Whether a setoff is allowed or disallowed ultimately rests on the sound discretion of the Bankruptcy Court. 4 *Collier on Bankruptcy*, § 553.02, at 553–10 to 553–11. *Sandman*, supra at 78.

> In order to establish a right to a setoff under § 553, a creditor must establish:
>
> > 1. A debt owed by the creditor to the debtor which arose prior to the commencement of the bankruptcy case;
> >
> > 2. A claim of the creditor against the debtor which arose prior to the commencement of the bankruptcy case; and
> >
> > 3. The debt and claim are mutual obligations.

*In re Fred Sanders Co.*, 33 B.R. 310 (Bankr.E.D.Mich.1983); *In re Taylor Motors*, 60 B.R. 760 (Bankr.Nev.1986); *In re Brooks*, 70 B.R. 368 (Bankr. E.D.Wis.1987).

*In re Sandman*, 5 Mont.B.R. at 78, states:

> "[B]efore a setoff can be made against the debts owed by a petitioner in bankruptcy, a creditor must seek relief from the automatic stay. *IRS v. Norton*, 717 F.2d 767, 771 (3rd Cir.1983)."

140 B.R. at 276–277.

■ The Debtors argue the same points as the Debtor in *Mohar*, i.e., that there is no mutuality of claims, agencies, Debtors, contracts, etc. For the same reasons as in *Mohar*, this Court again rejects the Debtors' arguments that mutuality is lacking between debts, government agencies, and Debtors. The Court finds that the elements of setoff have been shown. What remains, nevertheless, is whether the Court should exercise its equitable discretion and determine whether to allow or disallow the setoff. After balancing the equities in the instant case, I find the result should differ from that in *Mohar*, where the setoff was allowed only to the extent of raising the

claim of FmHA to secured status in the Plan, and the motion for relief from the stay was otherwise denied. 140 B.R. at 279–280.

This Court based its result in *Mohar* on the fact that the CRP contract payments were essential to allow the Debtor to reorganize. *Id.* Likewise in the instant case, it is uncontroverted that the majority of Debtors' farm income comes from the CRP contracts, and that the Debtors need the CRP contracts to pay both the FCS debt and the FmHA debt. Therefore, this Court finds that the CRP payments are essential and necessary to an effective Chapter 12 reorganization. With that finding, the most that FmHA seeks, as admitted in its brief, is for the Court to treat FmHA's claims as secured claims in the Chapter 12 Plan, to the extent of the amount due under the CRP contracts, and then paid under the terms of the Plan in accordance with 11 U.S.C. § 1225(a)(5). However, unlike *Mohar*, the equities dictate a different result in the instant case.

FmHA admits that FCS has a first, valid and subsisting lien against the Debtors' real property. Roger Smith, Assistant District Director of FmHA, testified that the value of the Debtors' share of the real property securing FCS' lien is $287,000, based upon an appraisal by FmHA. Smith admitted that one component of the appraisal value was the capitalization of the deferred payments under the CRP contracts. The Debtors argue that by granting FmHA a setoff in this case, the result would be to dramatically affect the secured position of FCS. There is no evidence before the Court as to the value of the real property absent the CRP contracts.

Furthermore, as noted above, there is a provision in each of the FCS mortgages that, in addition to the Debtors' real estate, the Debtors granted FCS a security interest in all leases, permits, licenses or privileges then held or later issued to the Debtors by the United States of America or any department or agency thereof. The issue as to the extent and validity of FCS' security interest in the CRP contracts has not been properly addressed by the pending motion. Debtors request in their brief that, if this Court allows the setoff and grants FmHA secured status, the Court set a hearing under § 506 to determine the secured claim of FCS. The Court further notes that FCS has not been heard from or joined in this matter. No objection to the FCS claim has been filed under F.R.B.P. 3007, nor has a motion for valuation of security been filed under F.R.B.P. 3012. More important, none of the parties have filed an adversary proceeding under F.R.B.P. 7001 to determine the validity, priority, or extent of the FCS or FmHA liens. *See*, e.g., *In re Wheeler Technology, Inc.*, 139 B.R. 235 (9th Cir. BAP 1992), discussing due process under Rule 7001.

█ This Court will not proceed to elevate FmHA's claim to secured status and adversely affect FCS' lien position without the above procedural steps being properly taken, notwithstanding its holding in *Mohar*. It is FmHA's responsibility to follow the proper procedure when the effect is to place in issue the validity of another creditor's first lien position. Because the evidence shows that FCS' secured claim is based in part upon a valuation of the present value of the CRP contract payments, and because FCS' mortgages may grant FCS a first lien against the CRP contract payments in addition to granting a prior lien against the Debtors' real property, this Court shall not bypass the procedural requirements of the above-cited Rules and elevate FmHA's claim to secured status above FCS' claim by the means of setoff as done in *Mohar*.

█ Beside the adverse effect a setoff may have against FCS, this Court finds that the equities require denial of FmHA's request for secured status against the CRP contracts, because of the adverse effect such a holding would have on the Debtors. It is uncontroverted that the CRP contract payments are necessary to the Debtors' effective Chapter 12 reorganization. Not only do the CRP contract payments provide the majority of the Debtors' farm income, they are needed to pay off both the FCS claim and the FmHA secured claim.

Without the CRP contract payments, the Debtors will not be able to cure the arrears in the FCS debt or pay either secured claim. If that occurs then the hypothetical set forth in the Debtors' brief may well occur, i.e., foreclosure by FCS and termination of the CRP contracts, with an attendant claim for liquidated damages. *Mohar*, 140 B.R. at 278. The Debtors would then most likely proceed to Chapter 7 to discharge the entire FmHA and FCS liability. This Court deems it more equitable for all parties to allow the Debtors the opportunity to reorganize under Chapter 12. In order for the Debtors' Plan to be feasible, the Debtors must be allowed to apply the CRP contract payments in the reorganization effort. *Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1165 (2nd Cir.1979). That court noted the proper rule that while setoff in a reorganization case is a favored remedy, denial by the bankruptcy court of a setoff request should be granted only where disallowance would be consistent with the debtor's successful reorganization efforts. And while deferment of payment of the setoff request is usual, as held in *Mohar*, the best interests of all of the creditors, tied to the Debtor's unique need of the CRP contract payments, swings the equities toward disallowance of FmHA's request. *See*, also, *Tradex, Inc. v. United States*, 65 B.R. 788, 792 (Bankr.Utah 1986) (setoff is an interruption in the conduct of debtor's business and may have detrimental effects on the attempted reorganization).

Finally, the Court notes that the Debtors have performed their side of the CRP bargain, in that they took their land out of production in order to receive the CRP contract payments. If the Debtors had not entered the CRP program, they would be able to use their land to produce crops to sell and use the proceeds to finance their reorganization Plan. Instead, they entered into the CRP contracts, agreeing to take the land out of production in return for monthly payments of $40 per acre. With the feasibility of the Plan of reorganization in the balance, this Court finds that equity under these facts requires that the Debtors receive the benefit of their CRP bargain to enable them the opportunity to reorganize.

In conclusion, this Court exercises its discretion and denies FmHA's request for secured status for its claim against the CRP contract payments, even though all the factors for granting the setoff are present. The denial is based upon the adverse effect of setoff against FCS's secured claim, without FmHA having followed the proper procedural steps, as well as the adverse effect of setoff, and the granting of secured status, on the feasibility of the Debtors' Plan of reorganization under Chapter 12.

IT IS ORDERED FmHA's Motion For Relief From The Automatic Stay And Request For Setoff, filed August 5, 1992, is denied.